## DETERMINED IN THE

# FIRST DEPARTMENT,

### AT

## GENERAL TERM.

### December, 1881.

---

## THE PEOPLE OF THE STATE OF NEW YORK EX REL. THE SOCIETY FOR PREVENTION OF CRUELTY TO CHILDREN v. EDWARD G. GILMORE.

26 1
80 458

*Contempt — what is not a resistance to a lawful mandate of a court — Code of Civil Procedure, secs. 8, 9 — When a mandate is issued by a court — As to the right to take a child from a parent who uses such child for illegal purposes, by habeas corpus — Chap. 122 of 1876.*

The fact that a door-keeper, stationed at the private entrance of a theatre, refused to allow an officer to enter by that door, for the purpose of arresting, under a warrant, a person then on the stage, and that the door-keeper had been ordered by the manager of the theatre not to allow any but actors and employes to use that entrance, does not render the manager guilty of a contempt, in resisting the mandate of a court, when it appears that such a rule was necessary for the proper management of the theatre, and was made for that purpose, and when it does not appear that he had any notice of the action of the door-keeper on the night in question, or intended in any way to shield the actor or prevent his arrest.

To render a person guilty of a contempt under sections 8 and 9 of the Code of Civil Procedure, for resisting " a lawful mandate of a court of record," the mandate must have been issued by a court, and not by a justice thereof.

When a mandate is to be regarded as issued by the court and when by the justice signing the same, considered.

*Quære,* as to whether a parent, guardian or other person in the lawful custody of an infant child, although using such child, or permitting it to be used, for

HUN—VOL. XXVI.     1

purposes prohibited by the act to prevent and punish wrongs to children can be properly regarded as holding the child in illegal confinement or custody within the meaning of section 65 of the *habeas corpus* act. (2 R. S. [Edm. ed.], 593.)

Appeal from an order of the Special Term, convicting Edward G. Gilmore of criminal and willful contempt, and adjudging that he be imprisoned in the county jail for the period of thirty days and that he pay a fine of $250, and be committed to such jail until such fine be paid, unless sooner discharged by the court.

*Certiorari* on relation of said Gilmore to review the proceedings of the justice before whom such conviction for contempt was had.

*A. J. Dittenhoefer,* for the relator, appellant.

*L. L. Delafield* and *John B. Pyne,* for the respondents.

Davis, P. J.:

The order sought to be reviewed in this case is brought into this court both by *certiorari,* and by appeal. It is not material to determine whether or not the writ of *certiorari* is a proper remedy, because the order adjudging the contempt and its punishment was made by the Special Term of the court, as appears upon its face, and is therefore one which can be reviewed on appeal. All the antecedent proceedings out of which the alleged contempt arose are properly brought before the court by the appeal, and the question whether the original process alleged to have been resisted by the appellant was issued by the court or by the justice as a magistrate, is one which must necessarily be considered on the appeal, inasmuch as the authority of the Special Term to make the order may depend upon its determination. On the 9th day of October, 1879, on the application and petition of "The Society for the Prevention of Cruelty to Children," a warrant was issued under certain provisions of the *habeas corpus* act, sections 65 and 66 (2 R. S. [Edm. ed.], 593), commanding the officer to whom it was addressed to take and bring a child called "La petite Bob," alleged to be in the illegal custody of one W. M. Davene, before the justice who issued such warrant, and commanding also the arrest of said W. M. Davene as for a criminal offense committed in the taking

and detaining of such child. The petition upon which the warrant was issued does not appear in the papers before us. The warrant was issued under the hand and seal of a justice of this court, and it commanded that the child and the person to be arrested be brought before him. It was indorsed "By the court, allowed: Hubert O. Thompson, clerk," and also bears on its face the seal of the court. The provision of the *habeas corpus* act under which the warrant was issued are as follows:

"§ 65. Whenever it shall appear by satisfactory proof, that any-one is held in illegal confinement or custody, and that there is good reason to believe that he will be carried out of the State or suffer some irreparable injury, before he can be relieved by the issuing of a *habeas corpus* or *certiorari*, any court or officer authorized to issue such writs, may issue a warrant under his hand and seal, reciting the facts, and directed to any sheriff, constable or other person, and commanding such officer or person to take such prisoner and forthwith to bring him before such court or officer, to be dealt with according to law."

The proceedings to be had upon the return of such a warrant are directed by sections 66, 67, 68 of the same act, which are as follows:

"§ 66. When the proof mentioned in the last section shall also be sufficient to justify an arrest of the person having such prisoner in his custody, as for a criminal offense committed in the taking or detaining of such prisoner, the warrant shall also contain an order for the arrest of such person for such offense.

"§ 67. Any officer or person to whom such warrant shall be directed, shall execute the same by bringing the prisoner therein named, and the person who detains him, if so commanded by the warrant, before the court or officer issuing the same, and thereupon the person detaining such prisoner shall make a return in like manner, and the like proceedings shall be had, as if a writ of *habeas corpus* had been issued in the first instance.

"§ 68. If the person having such prisoner in his custody shall be brought before such court or officer as for a criminal offense, he shall be examined, committed, bailed or discharged, by such court or officer, in like manner as in other criminal cases of the like nature."

. It will be observed that under these several sections a process

may be issued by any "court or officer" empowered to issue writs of *habeas corpus*, and that subsequent proceedings may be had before such court, or officer, as the case may be.

It is insisted on the part of the appellant in this case, that the warrant was issued by the judge as a magistrate, returnable before himself, and was not the process of a court.

This is certainly, upon the face of the proceedings before us, a debatable question and one of much significance, for if the warrant was issued by and returnable before the justice as a magistrate or officer, the alleged charge of contempt for violent resistance to its execution could not be sustained under the provisions of the Code of Civil Procedure (§§ 8 and 9 of the Code of Civil Procedure), because in that case the resistance, if proved, would not be to "a lawful mandate of a court of record." Another and quite different statute, if any, would be applicable to the case. The warrant after its direction to the several officers named, recites: "Whereas, E. Fellows Jenkins, * * has applied to *me* for a warrant, * * and whereas, it appears from the proofs before me on such applications that, etc., * * from which facts it satisfactorily appears to *me*, * * that the said child is held in illegal confinement and custody of the said Davene, * * and the facts further appearing to *me* sufficient to justify the arrest of said W. M. Davene." * * Then follows the mandate:

"These are, therefore, in the name of the people of the State of New York, to authorize and command you to immediately take the said child 'Little Bob,' or 'Le Petite Bob,' and also to arrest the said W. M. Davene and bring them, and each of them, before *me* without delay, to be dealt with according to law."

"Given under *my* hand and seal, at the city of New York, this 9th day of October, 1879, and subscribed by the justice and sealed with his private seal."

These are the several facts appearing in the process on which the claim is founded that it is the warrant of an officer and not of a court. But on the other hand, the warrant is indorsed as follows: "Supreme Court of the State of New York. The People, etc., *ex rel.* E. Fellows Jenkins, Superintendent of the New York Society for the Prevention of Cruelty to Children, against W. M. Davene. Warrant. (2 R. S., 572, § 65.) Moses Taylor Pyne, attorney for

relator, 52 Wall street, New York City. By the court, allowed. Herbert O. Thompson, clerk." And it bears also, on its face, the seal of the court.

All subsequent proceedings in the matter were evidently treated as before the Special Term at chambers. But these subsequent proceedings can hardly be held to characterize the warrant, so far as affects the question of the alleged contempt committed before those proceedings took place. The process was undoubtedly prepared by the attorney and presented to the justice for signature, and by him not scrutinized with care. It seems to be obvious that he intended and supposed he was issuing the warrant of the court, and not his own process as a judge, and if the question arose in the proceeding under the warrant itself, affecting the care and custody of the child or the examination and commitment of Davene, there would be little difficulty, especially as no question seems to have been made on that subject before the justice or court in treating it as a process of the court. It is not quite so easy to do so when the question arises upon a purely collateral proceeding against a third party upon a charge of criminal contempt.

The complaint was made in this case under the provisions of the "Act to prevent and punish wrongs to children" (chap. 122 of the Laws of 1876, vol. 1, p. 95), and the offense charged against Davene is for violating the provisions of that act, which violations are, by sections 2 and 4 of the act, declared to be misdemeanors. The act of 1876 was, of course, passed long subsequent to the provisions of the *habeas corpus* act, and it may be doubted whether a parent or guardian or other person in the lawful custody of an infant child, although using or permitting the use of such child for the purposes prohibited by the act to prevent and punish wrongs to children, can be properly regarded as holding the child in illegal confinement or custody within the meaning of section 65 of the *habeas corpus* act. But we do not deem it necessary to pass distinctly upon either of the propositions thus presented, because, as above stated, all of the proceedings to punish for contempt were had in the Special Term, and the appeal reaches them all. Upon a careful examination of the evidence set forth in the return, we are convinced that, assuming the process to have been the lawful mandate of a court of record within the meaning of the provisions of

the act, there was no such resistance willfully offered to such mandate proven against the appellant as is required to punish him for contempt.    It appears that W. M. Davene had the custody and control of the child, "La Petite Bob."   He and the child were employed at Niblo's theatre, of which the appellant Gilmore was lessee and manager, as actors on the stage.   Some of their exhibitions appear to have been given in the latter part of September, 1879, and to have been objected to · on behalf of the Society for the Prevention of Cruelty to Children.    Upon such objection the exhibitions were stopped; but in a few days afterwards Gilmore, having taken advice of his counsel, who seems to have advised him that they were not in violation of the law, resumed the exhibitions, and on the eighth of October addressed to the secretary of the society a letter, in which he suggests that, for the purpose of testing the question of the illegality of the exhibitions, he, the secretary, should cause the arrest of some responsible party connected with the theatre, and that on the judicial examination that would ensue the question could be tested as readily as by the arrest of the child, whether the performance is in violation of the law, and great inconvenience and unnecessary fright to the child can be avoided; and he added, " While we are advised by counsel that the performance in question is entirely lawful, we promise to discontinue if decided by judicial authority to be otherwise."

The suggestions of this letter were not adopted by the secretary. But on the ninth of October he made application for the warrant above mentioned, which was issued, and on the tenth the officer having it in charge went to the residence of Davene, but not finding him there, left word with his wife for him to appear before the justice at an hour named, or that he would be arrested wherever he could be found.    It appears that on Davene's return to his house his wife informed him of the fact that the officer had been there with the warrant and had left the directions mentioned, and that Davene immediately went to the appellant at the theatre, and was by him told in substance, as Davene says, that they could not arrest him; but, as the appellant says, that he had been advised by his counsel that the performance of Little Bob was not a violation of law and that no arrest could be maintained.

At that time, the appellant sent Davene with a note to his

counsel, Mr. Dittenhoefer, who immediately wrote and sent to the secretary of the society a letter in these words:

New York, *October* 10, 1879.

Mr. Jenkins:

Dear Sir. — Understanding that you have a warrant for the arrest of Mr. Davene, I would like to say that if you will fix any hour on Monday or Tuesday, in the afternoon, Mr. Davene will appear with me, as his counsel, before the justice who issued the warrant.

There is no need of an arrest.

Yours, etc.,

A. J. DITTENHOEFER.

And he added a postscript to the effect that if he desired they would appear on that day.

This letter was received by the secretary, but its suggestions were not accepted.　It appears further that on the evening of the tenth, the secretary of the society was at the theatre and saw the performance then on the stage.　Little Bob was not there, but Davene was engaged as one of the actors.　About ten o'clock in the evening the secretary and officer having the warrant and a police officer, went to the rear entrance of the theatre for the purpose of entering to arrest Davene.　A person by the name of John Smith, who was the doorkeeper, having charge of that entrance, refused to permit them to enter.　The evidence of the officer given on this question was that the warrant was produced, shown to Smith, and he was informed that they desired to enter into the theatre for the purpose of arresting Davene, but that Smith told them that that was a private entrance for the use of actors and employes only, and that he had peremptory orders to prevent the entrance of all other persons.　The officer's evidence also shows that Smith used some degree of force in preventing an entrance, and in closing the door against them.　A person was sent by Smith to notify Gilmore of the presence of the officers seeking to enter the theatre, but this person did not find or see Gilmore. He saw a Mr. Tooker, and informed him that there were persons outside who wanted to make an arrest, and Tooker says that he sent back word in substance that the entrance at Crosby street was a

private one, and that if the persons had any business there, they could enter at the Broadway entrance. It appears, without any dispute or contradiction, that Gilmore knew nothing of the attempt to enter at the private entrance, or of the resistance made by Smith, or of the notice sent by Tooker, until some time after those things had occurred and after the officers had gone away. He neither knew of nor directed the resistance, such as it was, to the officer having the warrant, and the only fact that connects him, even by inference, with the act of excluding or resisting the officer is that he had long before, and it would seem some years before, established as a rule of the theatre that no person should be admitted by that entrance to the stage of the theatre, except actors, actresses and persons employed on the stage, and had given orders accordingly. Beyond this, the evidence fails to connect the appellant with the transaction upon which the charge of criminal contempt was based. It certainly cannot be claimed that the establishment of such a rule for the regulation of admissions at that door is in itself resistance to the mandate of a court. The rule was a reasonable and eminently proper one. The facts disclose that a large number of persons were employed upon the stage of the theatre, sometimes to the number of 300, and that a large proportion of them were females. Not to have rigid rules for the exclusion at that entrance of all persons not connected with the theatre would have led not merely to great confusion, but to gross irregularities. Of course such a rule could not operate to prevent the entrance of officers armed with a lawful process seeking persons charged with crime who might be upon the stage of the theatre, but the act of the doorkeeper in excluding an officer cannot be attributed as a criminal offense to the proprietor of the theatre, on the simple ground that he had established such a general rule. The conduct of the officers in seeking to enter and serve the process at that time and during the performance in the theatre, under the circumstances of this case, certainly deserve condemnation. The secretary having probably seen Davene performing upon the stage and that little Bob was not there, and having received from Davene's counsel an offer that he would appear on the same or any following day before the justice without arrest, and having received from the appellant, two days before, a written proposition that the question of the criminality of exhibiting the child in the theatre, should be

brought, by the arrest of any responsible party connected with the theatre, before the court for determination, there was no good reason to suppose that an arrest at that time and in that manner was necessary. They must have known that an entrance upon the stage of several officers, for such a purpose, in the midst of a performance before a crowded house, would be likely to lead to excitement and commotion, probably alarming, if not dangerous, to the audience. Under such circumstances, a refusal to permit an entrance at that time for such purpose, although the strict legal right existed, can well be looked upon as less culpable than an actual criminal act, and certainly the law should not infer a criminal act from the mere existence of a reasonable general rule in respect of such admission, designed to preserve the theatre from unreasonable invasion and protect the audience from the possible consequences of such disturbance.

There is no difficulty in officers clothed with the authority of judicial processes, executing them in conformity to the dictates of good sense, as to time, place and manner; and officers who do not do this have no right to demand that the laws shall be strained for their vindication or protection, especially when their acts may lead to the evils that attend a panic in a crowded theatre.

We are unable to find anything in the evidence to uphold the conclusion that the appellant, by any act he is shown to have done, was amenable to the law for criminal contempt. The order of the court below not only adjudges him guilty of such contempt, but imposes the heaviest penalty which the law permits therefor, to wit, an imprisonment in the county jail for the period of thirty days and a fine of $250.

We think the order was a mistaken exercise of the authority of the court given by the provisions of the Code, and for that reason it is clearly our duty to reverse the same upon appeal, with ten dollars costs and disbursements against the respondent, the Society for the Prevention of Cruelty to Children.

Brady and Daniels, JJ., concurred in the result.

Order reversed with costs and disbursements against the Society for the Prevention of Cruelty to Children.